Reverse and Remand in part; Affirm in part; Opinion Filed April 3, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-01589-CV

## KAY YOST, Appellant
## V.
## JERED CUSTOM HOMES, Appellee

On Appeal from the 382nd Judicial District Court
Rockwall County, Texas
Trial Court Cause No. 1-08-1007

## OPINION

Before Justices Lang-Miers, Myers and Lewis
Opinion by Justice Myers

On the Court's own motion, we withdraw the opinion of March 19, 2013 and vacate the judgment. The following is now the opinion of this Court.

Kay Yost appeals the take-nothing summary judgment against her and in favor of Jered Custom Homes. Appellant brings two issues on appeal contending (1) the trial court erred by granting appellee's motion for summary judgment, and (2) the trial court erred by considering appellee's summary judgment evidence. We affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

This is a construction liability case concerning a house in Royse City, Texas. In 2004, Brad and Lea Byers hired appellee to construct the home. The Byerses had other professionals

design the home, and the foundation was designed by Brad Byers's employer, Childress Engineering Services, Inc. Appellee constructed the foundation and most of the house pursuant to a contract with the Byerses. The contract included an express warranty and a disclaimer of the implied warranty of good and workmanlike construction. The contract also provided that because the Byerses had hired their own design professionals to design the house, the parties agreed that those design professionals, and not appellee, would be responsible for the adequacy of the design and the sufficiency of the contract documents prepared by those professionals. The contract also provided that the Byerses would be responsible for obtaining any necessary soil and subsoil tests "and any other tests which may affect the structural integrity of the Improvements."

In 2006, appellant and her daughter, Tracy Yost, purchased the house from the Byerses. When appellant moved into the house, the locks she had previously installed no longer fit the doors. Appellant contacted Childress Engineering, which sent an engineer to her home. Childress Engineering purportedly inspected the foundation and reported that "the foundation is in a general satisfactory condition."

Appellant filed a complaint with the Texas Residential Construction Commission (TRCC) alleging numerous problems with the house. The TRCC appointed an independent inspector, Robert Pierry, to investigate the claims of structural defects. Pierry reported that the soil under the house was causing upheaval of the foundation on the left, right, and rear sides of the house, which "appeared to be the result of an increase of moisture in the soil beneath the affected portions of the foundation. The poor drainage conditions that exist around the perimeter of the house have likely caused or contributed to cause [t]his increase in soil moisture." Pierry concluded the foundation was within acceptable tolerances. Pierry recommended appellee repair a crack in the garage's foundation by injecting it with epoxy. Pierry also recommended appellee

repair some misaligned doors and windows, and that it repair a floor made uneven by improper framing or carpet pad installation. Pierry concluded that the uneven upstairs hall floor and the failure of a bedroom door to latch were not structural defects.

Appellant appealed Pierry's report. The appeals panel for the TRCC concluded the builder should repair the uneven upstairs hall floor and bedroom door because, even though they were not structural defects, they were workmanship and materials defects and should be repaired under the implied warranty. Appellant also appealed Pierry's failure to address appellant's complaint that the house was lower in the center and was 2.6 inches out of tolerance. The appeals panel concluded this item was in compliance with the usual and customary residential construction practices.

Appellee made an offer to appellant to make the repairs recommended by Pierry and the appeals panel or to pay appellant $4000 for the contractor of appellant's choice to make the repairs. Appellant never replied to this offer.

Appellant then had the house inspected by professional engineer Michael Porter. Porter concluded that negligent pier design resulted in distress cracking caused by foundation differential movement. The foundation's differential movement, Porter stated, was "the result of negligent pier design without the benefit of a site specific geotechnical investigation and the absence of provisions to protect against heaving resulting from upward soil moisture migration." He concluded it was not practical to make the corrections to return the home to like-new condition.

Appellant also had the house inspected by David Gregg, a licensed insurance adjuster and construction consultant. Gregg stated in his affidavit that appellee should have obtained a site-specific geotechnical report before building the home. He also stated that appellee was

- 3 -

negligent in relying on Childress Engineering's foundation design. "Had [appellee] obtained a site specific geotechnical survey prior to construction it could have taken steps to build the home so that it would not have been so subject to soil upheaval." Gregg estimated the cost to repair the foundation and damage at $524,563.

On October 16, 2008, appellant and Tracy Yost sued appellee and other defendants for damages associated with the house. They sued appellee for negligence for failing "to obtain a site specific geotechnical report or ensure that such a report was obtained prior to relying upon the foundation apparently designed by" Childress Engineering. The Yosts alleged this negligence resulted in the home being built without adequate provisions to protect against heaving from upward soil movement. The Yosts also alleged appellee was negligent because it "simply abdicated its responsibility to ensure that every aspect of the construction of Plaintiff's home was done in a good and workmanlike manner consistent with the standards in the industry." The Yosts also alleged appellee breached the implied warranties of habitability and of good and workmanlike construction when it "either built or designed the foundation improperly without obtaining a site specific geotechnical report or relied on others to do so for it."

Appellee moved for summary judgment. Each side objected to the other's summary judgment evidence. The trial court granted appellee's motion and ordered that the Yosts take nothing on their claims against appellee. However, the trial court did not rule on the objections to the summary judgment evidence. Appellant brings this appeal of the summary judgment.[1]

## JURISDICTION

Appellee has informed the Court that in 2011, before the summary judgment became a final judgment, appellant's lender foreclosed on the property and the house was sold at public

---

[1] Tracy Yost did not appeal.

- 4 -

auction to a third party. Appellee filed "Suggestion Re: Standing and Mootness," asserting that because appellant no longer owns the house, her claims for negligence and breach of implied warranty from the home's construction are moot because she no longer has standing to assert them. Appellant did not respond to appellee's "Suggestion."

Standing is a component of subject-matter jurisdiction and may be raised for the first time on appeal. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). For standing, a party must be personally aggrieved with an actual or imminent concrete and particularized injury. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). The standing doctrine requires a controversy to exist between the parties at every stage of the legal proceedings, including the appeal. *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 461 (Tex. App.—Dallas 2011, no pet.). A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005).

Appellee does not explain why appellant's alleged injuries from the asserted negligent construction and breach of implied warranties ceased when appellant no longer owned the house. Appellant's amended petition does not specify her damages beyond stating, "Plaintiffs' foundation is inadequate to the task and their home is structurally unsound, partially uninhabitable, and devoid of all market value." Appellee did not specially except to the petition, so any lack of specificity is waived. *See* TEX. R. CIV. P. 90. Appellant's allegation that the house lost market value as a result of appellee's negligence and breach of implied warranty may have affected the home's sale price in the foreclosure auction, thereby damaging appellant. And, appellant may have suffered other injuries. Based on the record before us, including appellee's statement in its motion for summary judgment that appellant was a purchaser of the house with

- 5 -

Tracy Yost, we conclude appellant had standing to bring the claims, and the claims were not rendered moot due to the foreclosure and sale of the house. *See ARC Constr. Mgmt., LLC v. Zelenak*, 962 N.E.2d 692, 698 (Ind. Ct. App. 2012) (plaintiffs who allegedly suffered damages as a result of defective construction of home did not lose standing after home was foreclosed); *see also Dowler v. Delta Inv. Hous., Inc.*, 834 S.W.2d 127, 128 (Tex. App.—Eastland 1992, no writ) ("we know of no reason why a subsequent foreclosure by the security interest owner would transfer to the purchaser any cause of action the debtor has against a manufacturer.").

## SUMMARY JUDGMENT

In her first issue, appellant contends the trial court erred by granting appellee's motion for summary judgment in the face of genuine issues of material fact. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet .). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood*, 294 S.W.3d at 762. When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch,*

*Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

### Specificity of Motion

Appellant contends the trial court erred in imposing the burden on appellant to produce some evidence in support of the claims because appellee's motion for summary judgment failed to specify the elements of appellant's claims lacking evidence. Appellant asserts she specially excepted to appellee's no-evidence motion for summary judgment for failing to specify which elements of appellant's cause of action lacked evidence. The no-evidence summary judgment rule requires the movant to identify the grounds in the motion. TEX. R. CIV. P. 166a(i). The comment to the rule states that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Id.* cmt. 1997; *see Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see also Bever Props. L.L.C. v. Jerry*

- 7 -

*Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 888 (Tex. App.—Dallas 2011, no pet.). The purpose of this requirement "is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment." *Timpte*, 286 S.W.3d at 311 (quoting *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978)). This purpose is analogous to the "fair notice" pleading requirements. *Id.*

In this case, appellee's motion for summary judgment set forth the elements of appellant's negligence claim: "1. The defendant owed a legal duty to the plaintiff; 2. The defendant breached the duty; and 3. The breach proximately caused the plaintiff's injury." *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Appellee stated in the motion, "Nor is there any evidence Jered's construction of the foundation proximately caused [P]laintiffs' injuries." This allegation specifically identifies the essential element of appellant's cause of action that lacks evidence: proximate causation of damages. We conclude that appellee's motion for summary judgment does not fail for lack of specificity.

### Negligence

Appellant alleged appellee was negligent by relying on Childress Engineering's design for the foundation and by not obtaining and reviewing a site-specific geotechnical report.

Appellee asserted appellant had no evidence of proximate causation. For an action to be the proximate cause of an injury, it must be both the cause in fact and the foreseeable cause of the injury. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 582 (Tex. 2007). These elements cannot be satisfied by mere conjecture, guess, or speculation. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2003). Appellant argues her negligence claim was supported by the affidavits of two expert witnesses, Michael Porter and David Gregg, and the report of Reed Engineering.

Affidavits without facts in support of the conclusions are conclusory. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). An expert witness's opinion testimony is conclusory when the opinion has no basis or when the offered basis provides no support. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Conclusory affidavits are substantively defective and do not raise fact issues. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Brown*, 145 S.W.3d at 751.

Porter testified the foundation problems were "primarily the result of negligent pier design without the benefit of a site specific geotechnical investigation and the absence of provisions to protect against heaving resulting from upward soil moisture mitigation." Appellee did not design the piers. Porter's affidavit presents no evidence that appellee did not construct the house and foundation according to the designs prepared by the Byerses' experts. Moreover, Porter's conclusion that the foundation problems resulted from "the absence of provisions to protect against heaving" is conclusory because neither his affidavit nor his report detail what these "provisions" were, nor do they provide evidence of how those provisions could have prevented the foundation damage in this case or how their absence caused the damage. Porter's affidavit presents no evidence that any negligence by appellee proximately caused appellant's damages.

Appellant states in her brief that "[t]he absence of provisions to protect against heaving resulting from upward soil migration is not in any way limited to the design of the piers and is equally applicable to the builder/Appellee." Appellant does not cite to any evidence in support of this statement. Nor does she cite to evidence that any "provisions" would have prevented the foundation damage in this case.

Appellant also relies on the affidavit of David Gregg, who testified:

Jered Custom Homes should have obtained a site-specific geotechnical report before building the home . . . . It is customary in the industry, whether building custom homes or tract homes, to have and review a geotechnical report before building a home. Jered Custom Homes, as the contractor is ultimately responsible for construction of the home and was negligent in failing to obtain such a report before building the home. Moreover, Jered Custom Homes was negligent in simply relying on the [Byerses'] foundation design. Had Jered Custom Homes obtained a site specific geotechnical survey prior to construction it could have taken steps to build the home so that it would not have been so subject to soil upheaval.

Gregg's affidavit, however, does not provide evidence that any acts or omissions by appellee proximately caused appellant's damages. Gregg did not state that obtaining the site-specific geotechnical report would have prevented the heaving, or that the information from the report would have affected the construction of the house preventing the damage from occurring. His statement that obtaining the report would have allowed appellee to "take[] steps to build the home so that it would not have been so subject to soil upheaval" is conclusory because he does not state what those "steps" would be, and he provides no evidence that those steps would have prevented the damage in this case. Gregg's statement that appellee "was negligent in simply relying on the [Byerses'] foundation design" was conclusory and provides no evidence of proximate causation because Gregg did not explain why appellee's reliance on the provided foundation design caused appellant's damages. We conclude Gregg's affidavit provides no evidence that appellee's negligence proximately caused appellant's damages.

Appellant also argues the report of Reed Engineering provides evidence that appellee's negligence proximately caused the foundation damage:

[T]he Reed Engineering geotechnical report prepared by Appellant's experts shows the presence of significant groundwater beneath Appellant's home unrelated to the pool or surface level drainage. That same report predicts soil upheaval beneath Appellant's home from 3–5 inches from dry to moist conditions. It also notes that trees were likely removed during the construction of the home, which would have otherwise caused the upper levels of soil to be relatively dry. . . . [F]rom these facts, a reasonable and fair-minded trier of fact could conclude that the upheaval causing damage to Appellant's home was the

- 10 -

proximate result of the negligent construction of Appellant's home, including [appellee's] failure to obtain a site-specific geotechnical evaluation of the site.

(Record citations omitted.) The Reed Engineering report sets forth the soil conditions at the house.[2] It makes no findings or conclusions about the construction of the home. The report makes a finding that "[t]he total potential for movement considering soil moisture variation from dry to moist condition at the boring locations is estimated to be on the order of three to five inches." However, the report makes no construction recommendations to reduce or eliminate the soil movement. Nor does it state that any act or omission by appellee caused the soil movement or otherwise caused appellant's damages. The report also states, "It is likely that the presence of the trees [before they were removed during construction] caused the upper soils to be relatively dry," but the report does not state that appellee's removal of the trees caused the soil to move or the foundation to shift. The Reed Engineering report provides no evidence that appellee proximately caused appellant's damages.

We conclude appellant failed to show the trial court erred by granting appellee's motion for summary judgment on appellant's negligence claim on the ground that appellant presented no evidence on the element of proximate causation.

### Breach of Warranty

Appellant also contends the trial court erred by granting summary judgment on appellant's claims for breach of the implied warranty of good and workmanlike construction and the implied warranty of habitability. A homebuilder impliedly warrants that a new house has been constructed in a good and workmanlike manner and is suitable for human habitation.

---

[2] The Reed Engineering report does not state there is "significant" groundwater but states "Ground water was noted at a depth of 22 feet in Boring B-1 at the end of the day of drilling. Post-drilling observations made approximately 24 hours following completion of drilling indicated presence of ground water at depths of 8 to 14-1/2 feet in Borings B-1 and B-3, respectively." The report does not state whether this amount of ground water is "significant."

- 11 -

*Humber v. Morton*, 426 S.W.2d 554, 555 (Tex. 1968); *see Centex Homes v. Buecher*, 95 S.W.3d 266, 269 (Tex. 2002) (quoting *Humber*). The implied warranty of good and workmanlike construction focuses on the builder's conduct while the implied warranty of habitability focuses on the state of the completed structure. *Centex*, 95 S.W.3d at 272–73.

### *Implied Warranty of Good and Workmanlike Construction*

Appellee moved for summary judgment on the implied warranty of good and workmanlike construction on the ground that the warranty had been disclaimed. In *Centex*, the supreme court held "that the implied warranty of good workmanship may be disclaimed by the parties when their agreement provides for the manner, performance or quality of the desired construction." *Id.* at 274–75. Appellee's contract to construct the home provided,

> Owner agrees and understands that by signing this contract they are waiving any claim or cause of action under any theory of implied warranty of good and workmanlike construction and that any such implied warranty, to the extent that it exists in Texas, is expressly replaced by the terms of the limited warranty incorporated by reference into this contract.

(Original in all capitals.)

If the appellant does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone. *Humane Soc'y of Dall. v. Dall. Morning News*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.); *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied). Appellant did not respond at trial or on appeal to appellee's argument that the warranty of good and workmanlike construction was disclaimed. Accordingly, we must affirm the trial court's grant of the motion for summary judgment on appellant's claim for breach of the implied warranty of good and workmanlike construction.

### *Implied Warranty of Habitability*

Appellee's sole ground for summary judgment on appellant's claim for breach of the implied warranty of habitability was that appellant judicially admitted in a pleading that the

house was not uninhabitable. A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.). A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Id.*; *see Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.—Eastland 2000, pet. denied); *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism'd). As long as the statement stands unretracted, it is binding on the declarant and must be taken as true by the court and jury. *Lee*, 43 S.W.3d at 641. Statements of fact in live pleadings that are not pleaded in the alternative are regarded as judicial admissions. *Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983).

In its motion for summary judgment, appellee asserted appellant judicially admitted the house was not uninhabitable because, in her response to appellee's request for production for all photographs, etc., supporting appellant's claim that the house was uninhabitable, appellant's attorney stated, "Plaintiff has no documents responsive to this request as the allegation that the home is uninhabitable was in error." Appellant's response to the motion for summary judgment and her brief on appeal argue that her response to the request for discovery was not a pleading, so appellee was incorrect in asserting appellant judicially admitted in a pleading that the house was not uninhabitable. On appeal, appellee concedes the response to production was not a pleading and that appellee "incorrectly characterized this discovery response as a judicial admission."[3]

---

[3] We agree with the parties that appellant's response to the request for production was not a pleading. *See* TEX. R. CIV. P. 45 ("Pleadings in the district and county courts shall (a) be by petition and answer . . . ."); *Appell v. Muguerza*, 329 S.W.3d 104, 117 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Discovery responses cannot amend a party's pleadings."). However, even if the response to the request for production could have been a judicial admission, the record shows appellant retracted the statement by amending her response and omitting the statement

- 13 -

Appellee argues on appeal that even though appellant's discovery response was not a judicial admission, it was an admission by a party opponent. Appellee asserts the statement was relevant evidence establishing that appellant's allegation that the home was uninhabitable was in error. However, appellee did not move for summary judgment on that basis. A court of appeals may not affirm a summary judgment on grounds "not expressly set out in the motion or response." *Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 122 (Tex. App.—Dallas 2009, pet. denied) (quoting *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993)). Because appellee had no other ground for summary judgment on appellant's claim for breach of the implied warranty of habitability, we conclude the trial court erred in granting summary judgment on that claim. We sustain appellant's first issue as to her claim for breach of the warranty of habitability, and we overrule the issue as to appellant's other causes of action.

## EVIDENTIARY OBJECTIONS

In her second issue, appellant contends the trial court "made numerous erroneous evidentiary rulings that resulted in harmful error." Appellant objected to the affidavits of appellee's experts and to appellee's use of appellant's responses to the requests for production. The trial court did not rule on appellant's objections. However, appellant contends the objections pointed out substantive defects in appellee's summary judgment evidence, which may be raised for the first time on appeal. *See Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas, 2004, no pet.).

We have already concluded the trial court did not err by granting the motion for summary judgment on appellant's claims for negligence and breach of the implied warranty of good and

---

"the allegation that the home is uninhabitable was in error." *See Atlas Gulf-Coast, Inc. v. Stanford*, 329 S.W.3d 920, 923 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (abandoned pleading is not judicial admission).

workmanlike construction. In reaching these conclusions, we did not rely on any of the evidence to which appellant objected. Therefore, even if the objected-to evidence was inadmissible, it did not "probably cause[] the rendition of an improper judgment" and is not reversible. *See* TEX. R. APP. P. 44.1(a). We overrule appellant's second issue.

## CONCLUSION

We reverse the trial court's judgment as to appellant's cause of action for breach of the implied warranty of habitability, and we remand the cause for further proceedings on that cause of action. In all other respects, we affirm the trial court's judgment.

_____
LANA MYERS
JUSTICE

111589F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Kay Yost, Appellant

No. 05-11-01589-CV      V.

Jered Custom Homes, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas Trial Court Cause No. 1-08-1007.
Opinion delivered by Justice Myers. Justices Lang-Miers and Lewis participating.

This Court's judgment of March 19, 2013 is **VACATED**. The following is now the judgment of this Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** as to appellant Kay Yost's cause of action for breach of the implied warranty of habitability, and this cause is **REMANDED** to the trial court for further proceedings on that cause of action. In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellant Kay Yost recover her costs of this appeal from appellee Jered Custom Homes.

Judgment entered this 3rd day of April, 2013.

_____
LANA MYERS
JUSTICE