

# NUMBER 13-24-00291-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

EDINBURG SRGV, LLC,                                          **Appellant,**

**v.**

RIALTO CAPITAL ADVISORS,
LLC,                                                        **Appellee.**

## ON APPEAL FROM THE 476TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

Appellant Edinburg SRGV, LLC (SRGV) appeals the trial court's order granting appellee Rialto Capital Advisors, LLC's (Rialto) motion to dismiss under the doctrine of forum non conveniens. In five issues, which we reorganize and renumber as two, SRGV argues the trial court abused its discretion when (1) it granted Rialto's motion to dismiss;

and (2) dismissed SRGV's case with prejudice. We affirm, as modified.

## I.    BACKGROUND

On September 25, 2019, SRGV filed its original petition against Rialto in the 275th District Court of Hidalgo County, Texas. In its petition, SRGV identified itself as "a limited liability company, organized under the law of Delaware, whose principal place of business is Edinburg, Hidalgo County, Texas." SRGV also pleaded that its "sole member is The Shoppes at Rio Grande Valley, L.P. [(The Shoppes)], a Texas limited partnership," and whose partners "are First Hartford Realty Co., a Delaware corporation, and First Hartford Rio Grande Valley, Inc., a Texas corporation." SRGV further identified Rialto as "a Delaware limited liability company" and pleaded that

> Hidalgo County is a county of proper venue because [SRGV's] cause of action or a part thereof accrued in Hidalgo County. Furthermore, the contractual obligations in question were, in whole or in part, to be performed in Hidalgo County. In addition, the land securing the underlying transaction is located in Hidalgo County, Texas.

SRGV further pleaded that it had entered into a loan agreement with Goldman Sachs Mortgage Company (Goldman) for a $32,500,000 loan on September 7, 2016. The loan was subsequently assigned to Wells Fargo Bank, National Association as trustee; Northmarq Capital, LLC (Northmarq) and Rialto acted as servicers of the loan.[1] A dispute arose between SRGV and Rialto over a provision of the loan agreement "concerning the application of monies previously advanced by [SRGV]." The loan agreement contained the following provision:

> Servicer. Lender may delegate any and all rights and obligations of Lender hereunder and under the other Loan Documents to the Servicer upon notice

---

[1] Goldman, Wells Fargo Bank, and Northmarq are not parties to this appeal.

2

by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

SRGV alleged that this provision was "never satisfied" because SRGV did not receive notice of Rialto's appointment as a servicer from the lender, and as a result, "all of [Rialto's] conduct was *ultra vires*."

According to SRGV, a lawsuit was filed but "[SRGV] and all the parties to the suit, including [Rialto], eventually voluntarily dismissed that '[a]ction.'" SRGV further pleaded that all the parties, including Rialto, "entered into a [s]tipulation in which the parties agree[d] to discontinue the [lawsuit]," and that "[p]ursuant to the terms of the [s]tipulation, the [lawsuit] was discontinued 'without costs or attorney's fees to any party as against another.'" According to SRGV, Rialto "claimed that it was a beneficiary of [an] indemnity provision [of the loan agreement]" and subsequently demanded it "be paid $205,051.00 [in] attorney's fees 'purportedly incurred in the [lawsuit].'" According to SRGV,

> [I]f [SRGV] would have failed to pay the $205,051.00 in attorney's fees demanded, [Rialto] would be faced with the threat of foreclosure on [SRGV's] shopping center. If that came to pass, the jobs of hundreds of Hidalgo County residents would be affected. Furthermore, it could have resulted in possible bankruptcy proceedings. To avoid that possibility, [SRGV] paid the attorney's fees demanded under economic duress and stating that such payment was without prejudice with a reservation of all of its rights under the Loan agreement.

SRGV requested a declaratory judgment, specifically declaring that "[Rialto's] conduct was *ultra vires*, and therefore of no effect"; the "discontinuance of the [lawsuit] and the [s]tipulation discontinuing [that] prior lawsuit bars the recovery of attorney's fees by [Rialto];" "the requested indemnification is improper under the Loan agreement"; "the costs and expenses charged by [Rialto] as its purported attorney's fees and costs were

3

unreasonable and therefore, not recoverable, as requested"; and "[SRGV] was never liable for the fees and costs that it was demanded to pay." SRGV further requested the trial court order "those fees and costs paid by [SRGV] be returned by [Rialto] to [SRGV]." SRGV pleaded "money had and received" in the alternative. Furthermore, SRGV sought damages in the form of a judgment "for the amount improperly paid, $205,051.00," pre-judgment and post-judgment interest, reasonable attorney's fees, and costs.

On November 27, 2019, Rialto filed its original answer generally denying the allegations in SRGV's petition and raising numerous affirmative defenses. On the same day, Rialto filed its "Motion to Dismiss Under the Doctrine of Forum Non Conveniens," arguing that SRGV's case should be dismissed based on the doctrine of forum non conveniens in favor of New York. According to Rialto, SRGV's case had "nothing to do with Texas and everything to do with New York and a litigation [SRGV] filed and voluntarily dismissed there." It also argued that "[n]one of the operative events at issue in the instant lawsuit occurred in Texas and Texas law is not at issue," and that "the sole question before the [trial c]ourt is whether New York law required [SRGV] to pay [Rialto's] attorneys' fees, which were incurred as part of a New York litigation initiated in New York by [SRGV] pursuant to a loan agreement governed by New York law." According to Rialto, New York was an alternative forum available to SRGV, and that the public and private interest factors weighed in favor of dismissal. As part of its motion, Rialto attached an affidavit by John P. Doherty, Esq., with attachments (each discussed below) consisting of a copy of SRGV's loan agreement and deed of trust; a copy of SRGV's complaint filed in the New York litigation; a copy of a stipulation filed by SRGV, Rialto, and the other

4

defendants in the New York litigation; a copy of SRGV's "Notice of Discontinuance" filed in the New York litigation; and Rialto's indemnification demand letter to SRGV.

In his affidavit, Doherty stated that he served as counsel for Rialto in the New York litigation that "gave rise to the instant dispute." Doherty stated that SRGV's $32,500,000 loan was "secured by the mortgage of a shopping center known as The Shoppes" pursuant to a loan agreement governed by New York law which contained a permissive New York forum selection clause. According to Doherty, SRGV's loan is held by a trust that owns other commercial loans, and that Rialto acts as "special servicer" for SRGV's loan. Doherty stated that SRGV filed suit in New York state court alleging that Rialto "wrongly refused to release money held as security for the Loan." Doherty stated he provided SRGV notice that it would be responsible for Rialto's legal fees at the outset of the New York litigation. The parties eventually agreed to mediate in New York with a New York mediator. Two days after the mediation, SRGV agreed to voluntarily dismiss the New York litigation. After the case was dismissed, Rialto billed SRGV for the attorney's fees incurred in the New York litigation, which SRGV contested. According to Doherty,

> The sources of proof regarding the at-issue attorneys' fees will come from, among other things, the files of [Doherty's] law firm, Alston & Bird, in New York. Likewise, the supporting testimony and affidavits will come from [Doherty] and the other attorneys and support staff that litigated the New York [l]itigation, all of whom are in New York.

> The New York courts have a process in place to determine whether legal fees are reasonable. New York Supreme Court judges refer them to Special Masters or Judicial Hearing Officers, whose primary job is to determine the applicability and reasonableness of attorneys' fees.

The loan agreement attached to Doherty's affidavit was dated September 7, 2016, and signed by SRGV as "BORROWER" and Goldman as "LENDER." We note that SRGV

identified itself in the loan agreement as "a Delaware limited liability company." The loan agreement contained the following provisions:

<u>DEFINITIONS</u>

(a)    When used in this Agreement, the following capitalized terms have the following meanings:

. . . .

"Agreement" means this Loan Agreement, as the same may from time to time hereafter be amended, restated, replaced, supplemented or otherwise modified in accordance herewith.

. . . .

"Servicer" means the entity or entities appointed by Lender from time to time to serve as servicer and/or special servicer of the Loan. If at any time no entity is so appointed, the term "Servicer" shall be deemed to refer to Lender.

9.2 <u>GOVERNING LAW</u>.

(A) THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CHOICE OF LAW RULES TO THE EXTENT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION WOULD BE REQUIRED THEREBY.

(B) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS (OTHER THAN ANY ACTION IN RESPECT OF THE CREATION, PERFECTION OR ENFORCEMENT OF A LIEN OR SECURITY INTEREST CREATED PURSUANT TO ANY LOAN DOCUMENTS NOT GOVERNED BY THE LAWS OF THE STATE OF NEW YORK) MAY BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK. . . .

. . . .

9.17 <u>General Indemnity; Payment of Expenses</u>.

. . . .

6

(f) Borrower shall reimburse Lender upon receipt of written notice from Lender for . . . (ii) all reasonable out-of-pocket costs and expenses incurred by Lender (or any of its affiliates) in connection with . . . (D) enforcing or preserving any rights, in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents or any Collateral. . . .

9.22 <u>Servicer</u>. Lender may delegate any and all rights and obligations of Lender hereunder and under the other Loan Documents to the Servicer upon notice by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

The complaint attached to Doherty's affidavit was purportedly filed on September 18, 2018, by SRGV against Rialto, Goldman, and Northmarq in the Supreme Court of the State of New York, County of New York (New York trial court). SRGV's complaint alleged that Goldman failed to disburse to SRGV an "Earnout Initial Deposit Amount of $1,100,000.00" after SRGV confirmed "all the conditions precedent to disbursement" and had demanded disbursement from Goldman. According to SRGV, Rialto, "purportedly acting as special servicer on behalf of Goldman, denied the disbursement without explanation." SRGV raised six causes of action against the defendants. With respect to Rialto, SRGV specifically alleged that Rialto tortiously interfered with the loan agreement.

The indemnification demand letter attached to Doherty's affidavit was sent by Rialto on December 7, 2018. The letter provided SRGV notice of Rialto's demand for indemnification under the loan agreement for "any and all sums Lender may be required to pay arising out of" SRGV's litigation in the New York trial court. In the letter, Rialto stated it had written its letter "in its capacity as 'General Special Servicer'" for the lender of SRGV's loan.

The stipulation attached to Doherty's affidavit was entered on January 22, 2019, in the New York trial court. It was titled "STIPULATION DISCONTINUING ACTION WITHOUT PREJUDICE AGAINST GOLDMAN SACHS MORTGAGE COMPANY ONLY AND AMENDING CAPTION," and indicated that the parties of SRGV's New York lawsuit stipulated and agreed that the action "is[] discontinued without prejudice as against [Goldman] only," that "SRGV may file an amended summons and complaint . . . dropping [Goldman] as a defendant and adding [Wells Fargo Bank] as Trustee . . . as a defendant."

The "Notice of Discontinuance" attached to Doherty's affidavit was filed by SRGV on May 23, 2019, SRGV in the New York trial court. SRGV stated in the notice that it "hereby discontinues this action . . . without prejudice and without costs or attorneys' fees to any party as against another."

On October 21, 2020, in the Texas suit, SRGV filed its response to Rialto's motion to dismiss. SRGV pleaded that it "owns The Shoppes . . . , a popular shopping center located in Edinburg's commercial district," its loan was guaranteed by a deed of trust "filed in [the] Hidalgo County real property records," and "the only connection this matter has to New York is that [SRGV] borrowed money to finance the shopping center from a lending institution bank that happens to be based in New York." SRGV argued that "everything about [its] case involves Texas," that "[Rialto] claimed it was the agent of the duly-assigned lender and . . . entitled to reimbursement for its attorneys' fees" as the result of SRGV's discontinuance of its New York litigation, and that Rialto "indirectly threatened to foreclose upon the shopping center if [SRGV] did not pay their demand."[2] SRGV argued

---

[2] We note that SRGV referred to itself in its response as a "Texas resident" and a "Texas company."

8

that Doherty's affidavit was facially insufficient and that some of his statements were conclusory. Furthermore, SRGV argued that several private and public interest factors weighed against dismissal. SRGV attached four exhibits in support of its response, including a copy of SRGV's loan agreement and deed of trust, an affidavit by Jeffery Carlson, an affidavit by Hitesh K. Chugani, and an affidavit by John D. Dercole.

Carlson stated in his affidavit that he was employed as general counsel for the First Hartford Corporation, the parent company of "First Hartford Realty Corporation[,] which is the owner of the corporate general partner (First Rio Grande Valley, Inc.) of the sole member ([The Shoppes]) of [SRGV]." According to Carlson, The Shoppes "consists of approximately 60 acres and 450,000 square feet of retail space" and "has likely generated millions of dollars in various forms of tax revenue, and provided employment to numerous Hidalgo County residents" since its inception in 2007. Carlson stated that SRGV "maintains two legal residencies," one in Connecticut, "where its executive offices are located," and the other in Texas, "where its business activities are conducted and its assets are located." Carlson further attested that SRGV's "sole source of revenue is the monies generated from the shopping center, which are deposited into Texas bank accounts," that it "files the relevant Texas corporate tax returns," and that it "maintains an on-site manager or managers in Texas, who make the day to day operational decisions for [SRGV]." Carlson then described the circumstances of SRGV's New York lawsuit and how Rialto demanded $207,299.97 in attorney's fees after SRGV "discontinued" the case. Carlson further stated that SRGV "acceded to [Rialto's] demands and paid [Rialto] the entire amount of the funds requested with money generated in Texas, and which would

9

be debited from [SRGV's] Texas bank account"; that it is "now seeking return of such money, so that such can be deposited into a Texas bank account, [SRGV's] operating account"; and "[u]pon receipt, this money would be available to pay for . . . the Texas operations of [SRGV]."

Chugani attested that he was a licensed attorney who had practiced before the Honorable Marla Cueller of the 275th District Court. Chugani stated that Judge Cuellar "is clearly able to determine Texas law," and that he was sure she "can determine New York law" "[a]fter being provided the required materials." Chugani stated that Judge Cuellar "would move to resolve this case quickly," and that if the matter was not resolved by summary judgment, "a trial on the merits would be held in approximately a year and [a] half to two years (most of the delay being caused by the backlog resulting from the Covid 19 pandemic)." According to Chugani, SRGV's case "would not linger on the docket for approximately seven to ten years."

Dercole stated in his affidavit that he was a licensed attorney, and that the "majority of [his] practice involves litigation in the state and federal courts of New York." Dercole stated that he "disagree[d] with a number of statements" made in Doherty's affidavit. According to Dercole, "Rialto should have no problem obtaining documents and records from its New York attorneys necessary for it to defend [SRGV's Texas] ligation," and it should have "no problem obtaining testimony from its attorneys." Dercole also stated, "With the advent of C[OVID-]19, courts in New York State, as have those throughout the country, become adept at utilizing distant video conferencing services," and the "[u]se of such [services] will avoid forcing Rialto's New York attorneys from traveling to Texas."

10

Dercole further attested that "[b]ills from [Rialto's] New York attorney's for . . . legal services likely number only a small number of pages which can easily be transmitted by fax or attached to an email." Dercole stated

> Rialto's motion misstates basic New York civil procedure. The motion implies that had [SRGV] filed a lawsuit in New York, such new case would automatically be assigned to the court in which the initial lawsuit was filed. Such an assignment is not guaranteed. Lawsuits in New York are assigned to courts on a generally random basis; the litigants do not possess a choice of which court in which to appear. They can merely request that a newly filed case be assigned to a judge who handled a previous or pending related case. Such assignment or transfer is not guaranteed.

Dercole further stated that "Rialto's entitlement to attorney's fees for its defense of the New York action involves[ ]an interpretation of the loan agreement and [the stipulation of discontinuance executed by Goldman] and, if it is so entitled, a determination of whether the $200,000 in fees charge[d] was reasonable." According to Dercole, "the New York [trial] court is not in any better position to make these determinations than [the 275th District] Court since the New York action was dismissed essentially without any substantive orders being issued by the [trial c]ourt." Dercole stated that SRGV's case "could be resolved much quicker in Hidalgo County, Texas," and that he "would anticipate that it would take longer to resolve this matter if this case were refiled in New York, especially given that New York State courts are not fully operational as they were before C[OVID-]19." Dercole also attested that Doherty's statements "concerning a special process for determining the reasonableness of attorney's fees is overstated," that "not every New York judge will refer a determination of the reasonableness of attorney's fees to a special master or judicial hearing officer." Furthermore, Dercole stated that

for those courts which possess 'Special Masters or Judicial Hearing

11

Officers[,'] their primary job is to assist the court with issues referred to them. Thus, the special master of judicial hearing officer ordinarily will only make a recommendation regarding the reasonableness of fees to which the assigned judge need not accept. Thus, it can be more efficient for the judge to decide the issue of attorney's fees directly without making a reference.

On January 31, 2022, Rialto filed its "Reply Memorandum of Law in Further Support of [Rialto's] Motion to Dismiss Under the Doctrine of Forum Non Conveniens." On February 24, 2022, SRGV filed its sur-reply.[3]

On August 3, 2023, the instant case was transferred via written order from the 275th District Court to the 476th District Court (trial court). On September 14, 2023, the Honorable Missy Medary, the presiding judge of the Fifth Administrative Judicial Region of Texas, assigned the Honorable Martin Chiuminatto, former judge, to preside over SRGV's case via written order. On January 3, 2024, the trial court entered its "Agreed Docket Control Order," which set, among other things, Rialto's motion to dismiss for "re-hearing on February 23, 2024[,] at 10 A.M. in person." On February 21, 2024, the parties filed a joint motion requesting that the February 23, 2024 hearing "be a hearing by submission." That same day, the trial court signed its order granting the joint motion.

On February 28, 2024, the trial court signed its order granting Rialto's motion to dismiss for forum non conveniens and dismissed SRGV's case with prejudice. On March 15, 2024, SRGV filed its request for findings of facts and conclusions of law, as well as its "Motion to Amend, Modify, Or Correct Order of Dismissal." In its motion, SRGV argued, among other things, that the trial court's order was "incorrect as to form" because it

---

[3] The record before us contains no reporter's record of any hearing on Rialto's motion to dismiss for forum non conveniens.

12

dismissed the case with prejudice, which it urged was improper. SRGV requested that the order "be amended and reformed." On April 9, 2024, SRGV filed its notice of past due findings of facts and conclusions of law. On April 18, 2024, the trial court issued the following findings of fact and conclusions of law:

## I.
## FINDINGS OF FACT

1.      [SRGV] is a commercial loan borrower that obtained a $32,500,000 loan secured by the mortgage of a shopping center known as [The Shoppes] (the "Loan") pursuant to a loan agreement (the "Loan Agreement"). The Loan is held by a trust.

2.      The Loan Agreement is governed by New York law and contains a New York forum selection clause, which is permissive.

3.      [Rialto] acts as the special servicer for the Loan. Rialto's principal place of business is in Miami, Florida.

4.      Approximately 6 years ago, a dispute arose between [SRGV] and Rialto as the Lender, wherein [SRGV] alleged that Rialto wrongly refused to release money held as security for the Loan. [SRGV] hired a New York law firm (Phillips Lytle LLP), filed suit in New York state court against Rialto and others, and alleged that venue and jurisdiction were proper in New York (the "New York Litigation"). In the New York Litigation, [SRGV] alleged that its principal place of business was in Connecticut.

5.      Under the Loan Agreement, Lender has the right to recoup from [SRGV] "all reasonable out of pocket costs and expenses incurred by Lender (or any of its affiliates) in connection with . . . defending [] any action or proceeding or other litigation, in each case against, under or affecting [(SRGV) or the Loan Agreement]." Loan Agreement § 9.17.

6.      Because the New York Litigation triggered the Lender's right to indemnification under the Loan Agreement, the Lender (Rialto) sent [SRGV] a notice at the outset of the New York Litigation that [SRGV] would be responsible for the Lender's legal fees in the litigation.

7.      [SRGV] voluntarily dismissed the New York Litigation after

13

approximately eight months.

8.  Once the case was dismissed, Lender billed [SRGV] for the attorneys' fees incurred in the New York Litigation.

9.  [SRGV] contested its obligation to pay Lender's legal fees and expenses and retained another New York law firm to contest its payment of the fees, and that firm sent a letter and made several demands of Lender in New York.

10. In 2019, [SRGV] filed this Action in Hidalgo County, Texas.

## II.
### CONCLUSIONS OF LAW

11. The doctrine of forum non conveniens requires the dismissal of this [a]ction.

12. Forum non conveniens is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient jurisdiction on a litigant. *See K2M3, LLC v. Cocoon Data Holding Pty. Ltd.*, No. 13-11-00194-CV, 2012 [WL 2469705], at *11 (Tex. App.—Corpus Christi[–Edinburg] June 28, 2012, pet. denied) (mem. op.) (citing *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mex., S.A. de C.V.*, 336 S.W.3d 664[,] 671 (Tex. App.—Houston [1st Dist.] 2010, no pet.)[).]

13. In deciding whether to exercise forum non conveniens, courts must determine whether there exists an alternative forum and, if so, determine which forum is best suited to the litigation. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235[ ](1981).

14. In deciding what forum is best suited to the litigation, courts consider whether certain private and public interest factors weigh in favor of dismissal. Private considerations include: (a) the relative ease of access to sources of proof; (b) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (c) the possibility of view of premises, if view would be appropriate to the action; (d) the enforceability of a judgment once obtained; and (e) all other practical problems that make trial of a case easy, expeditious and inexpensive. Public considerations include: (a) administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin; (b) the burden of jury duty that ought not to be imposed upon the people of a community which has no relation to the

14

litigation; (c) local interest in having localized controversies decided at home; and (d) avoiding conflicts of law issues. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501[ ](1947).

15.  New York exists as an alternative forum that is both available and adequate. New York courts are available; the parties have already litigated there and the Loan Agreement contains a permissive New York forum selection clause. In addition, New York courts are adequate to address [SRGV's] claim, which arose in New York and is controlled by New York law.

16.  The public interest factors weigh in favor of dismissal because New York courts are conveniently situated to resolve this matter. This is fundamentally a New York dispute, involving questions of New York law, a New York contract, and the interpretation of the New York Order in the New York Litigation. The only aspect of this case related to the Hidalgo County community is that the Loan issued under the Loan Agreement is secured by [The Shoppes]. But this case has no relation to the real property securing the Loan; it involves the reasonableness of a New York law firm's legal fees incurred as part of the New York Litigation, under a New York contract. As New York is where the fees were incurred, Texas has no genuine interest in this litigation. In addition, New York has a pronounced local interest in deciding the issue before this Court because the issue arose in New York and the court is asked to interpret an order issued by a New York court. Lastly, it is more convenient to litigate this case in New York because the case is controlled entirely by New York law.

17.  The private interest factors weigh in favor of dismissal[.] [T]he primary sources of proof are more conveniently available and reviewed in New York by the New York courts. The primary factual issue in this case is the reasonableness of the at-issue attorneys' fees. The sources of proof regarding these fees will come from the files, affidavits, and testimony of the New York law firm and attorneys that litigated the New York Litigation. This proof and witness testimony is much more accessible in New York than in Texas. Additionally, the New York courts have a process in place to determine whether legal fees are reasonable; New York Supreme Court judges refer them to Special Masters or Judicial Hearing Officers, whose primary job is to determine the applicability and reasonableness of attorneys' fees.

18.  This Court therefore has no connection to the dispute at issue and the doctrine of forum non conveniens requires dismissal.

15

This appeal ensued.[4]

## II. FORUM NON CONVENIENS

In its first issue, SRGV argues that the trial court abused its discretion when it granted Rialto's motion to dismiss, raising multiple arguments we address in turn, below.

## A. Standard of Review and Applicable Law

We review a trial court's decision to dismiss a case on forum non conveniens grounds for an abuse of discretion. *See In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *See id.* (citing *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding)). "In assessing whether a trial court abused its discretion, relevant factors include the legal and factual sufficiency of evidence supporting the [trial] court's findings." *Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 246 (Tex. App.—El Paso 2019, pet. denied) (citing *Tullis v. Ga.-Pac. Corp.*, 45 S.W.3d 118, 121 (Tex. App.—Fort Worth 2000, no pet.)); *see also RSR Corp. v. Siegmund*, 309 S.W.3d 686, 709 (Tex. App.—Dallas 2010, no pet.) ("A trial court does not abuse its discretion when it bases its decision on conflicting evidence and there is evidence in the record that reasonably supports the decision.").

"In determining a legal sufficiency [challenge], we consider all evidence in the light

---

[4] The record does not contain an amended or reformed order granting Rialto's motion to dismiss for forum non conveniens by the trial court. Therefore, we conclude that SRGV's motion was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c), (e); *see also Phillips v. Am. Bankers Ins. Co. of Fla.*, No. 01-18-00375-CV, 2019 WL 3121856, at *5 (Tex. App.—Houston [1st Dist.] July 16, 2019, pet. denied) (mem. op.) ("If a motion to modify a judgment is not denied in a written order, then the motion is overruled by operation of law 75 days after the trial court signs the judgment.").

most favorable to the party in whose favor the trial court ruled, and indulge every reasonable inference from the evidence in that party's favor." *Alvarez Gottwald*, 568 S.W.3d at 246 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). "A legal sufficiency issue may only be sustained when the record discloses (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact." *Id.* (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "There is some evidence to prove the existence of a vital fact when the proof supplied furnishes a reasonable basis for reasonable minds to reach differing conclusions as to the existence of a vital fact." *Id.* (citing *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex. 1992) (per curiam)). In addition, "[w]e sustain a factual sufficiency challenge only when the evidence supporting the finding is so weak 'as to be clearly wrong and unjust.'" *Eggemeyer v. Hughes*, 621 S.W.3d 883, 890 (Tex. App.—El Paso 2021, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

"[W]e must respect that the trial court as the fact finder was the sole judge of the credibility of the witnesses and the weight to be given to their testimony; we presume the trial court resolved any conflicting evidence in favor of the prevailing party." *Id.* (first citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819–20 (Tex. 2005); and then citing *Wheeling v. Wheeling*, 546 S.W.3d 216, 223 (Tex. App.—El Paso 2017, no pet.)). "Indeed, so long as the evidence at trial 'would enable reasonable and fair-minded people to differ in their

conclusions,' we will not substitute our judgment for that of the fact finder." *Id.* (first citing *Wilson*, 168 S.W.3d at 822; and then citing *Wheeling*, 546 S.W.3d at 223).

Forum non conveniens "is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient jurisdiction on a litigant." *Alvarez Gottwald*, 568 S.W.3d at 246 (first citing *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994); and then citing *Yoroshii Investments (Mauritius) Pte. Ltd. v. BP Intern., Ltd.*, 179 S.W.3d 639, 643 (Tex. App.—El Paso 2005, pet. denied)). "A trial court will exercise the doctrine of forum non conveniens when it determines that, for the convenience of the litigants and witnesses and in the interest of justice, the action should be instituted in another forum." *Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 672 (citing *Choo*, 881 S.W.2d at 302). "Texas recognizes two types of forum non conveniens analysis." *In re Weatherford Int'l, LLC*, 688 S.W.3d 874, 879 (Tex. 2024) (orig. proceeding). "Statutory forum non conveniens 'applies to actions for personal injury or wrongful death.'" *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 71.051(i)). "Common-law forum non conveniens applies in all other types of actions," like the instant case. *Id.* (first citing *In re Mahindra USA, Inc.*, 549 S.W.3d 541, 544 (Tex. 2018); and then citing *Alvarez Gottwald*, 568 S.W.3d at 246). "Texas courts have routinely looked to a well-developed body of federal law to guide forum non conveniens disputes." *Diaz v. Todd*, 618 S.W.3d 798, 804 (Tex. App.—El Paso 2020, no pet.) (citation modified) (citing *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 32 (Tex. 2010) (per curiam) ("[W]e regularly consider United States Supreme Court precedent in both our common law and statutory forum non conveniens cases.")).

"At its core, forum non conveniens is a balancing act." *Id.* at 804 (citation modified).

18

"Courts balance the plaintiff's choice of forum against how a set of public and private interests might 'strongly favor' an available alternate forum." *Id.* (quoting *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) ("[A] forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum.")). "Generally, a plaintiff's choice of forum is entitled to deference, and a defendant seeking forum non conveniens dismissal bears a heavy burden in opposing the plaintiff's chosen forum." *Alvarez Gottwald*, 568 S.W.3d at 248 (citation modified) (quoting *Quixtar*, 315 S.W.3d at 31). "A non-resident plaintiff's choice to sue in Texas, however, enjoys 'substantially less deference' than it would if the plaintiff had been a resident of Texas." *Id.* (quoting *Quixtar*, 315 S.W.3d at 33). "As such, a defendant's burden of proof is less stringent when plaintiffs are not Texas residents." *Id.* Further, the Texas Supreme Court has recognized that "[i]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *In re Pirelli*, 247 S.W.3d at 676 (quoting *In re Smith Barney,* 975 S.W.2d 593, 598 (Tex. 1998)).

An alternate forum must be both adequate and available. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 887 (Tex. App.—El Paso, 2012, orig. proceeding) ("Because the common law doctrine of forum non conveniens presumes that at least two forums are available to a plaintiff, a trial court must first determine whether an alternative forum exists, inquiring whether another forum is 'available' and 'adequate.'" (citation modified)); *Alvarez Gottwald*, 568 S.W.3d at 249 ("[U]nder common law forum non conveniens analysis,

19

whether a forum is both available and adequate is a threshold question to be answered before a court can weigh the public and private factors considered in a common law forum non conveniens analysis." (citation modified)). If such an alternate forum exists, courts then assess the relevant private and public interests as established in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). *Diaz*, 618 S.W.3d at 805. The private interests include:

> (1) the ease of access to sources of proof; (2) the availability of the compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) all other practical problems, affecting the ease and expense of the case; and (5) issues related to the enforceability of a judgment obtained in the forum.

*Siegmund*, 309 S.W.3d at 710 (first citing *Sarieddine v. Moussa*, 820 S.W.2d 837, 842 (Tex. App.—Dallas 1991, writ denied); and then citing *Gulf Oil*, 330 U.S. at 508). The public interests include:

> (1) the burden imposed on the citizens of the state; (2) the burden imposed on the state's court; (3) the general interest in having localized controversies decided in the jurisdiction in which they arose; and (4) the appropriateness in having a diversity case tried in a forum that is familiar with the law that must govern the case.

*Id.* The forum non conveniens determination "may be reversed only when there has been a clear abuse of discretion; where the court has considered all the relevant public and private interest factors, and where its balancing of these factors is reasonable, its discretion deserves substantial deference." *Quixtar*, 315 S.W.3d at 31 (quoting *Reyno,* 454 U.S. at 257).

**B.     Analysis**

**1.     Delay**

SRGV complains that the trial court "should have summarily overruled" Rialto's motion to dismiss "[g]iven [Rialto's] repeated delays in obtaining a hearing on its forum non conveniens motion, [Rialto's] complete failure to take any additional steps to obtain a ruling, and [Rialto's] efforts to take the matter to trial." Rialto responds that SRGV failed to preserve this sub-issue by "failing to raise it before either trial court." *See* TEX R. APP. P. 33.1. Even assuming SRGV's sub-issue is preserved, we conclude it is without merit.

SRGV cites to several cases for the proposition that a trial court should "summarily deny a forum non conveniens request" when litigation has already proceeded, including *Munro v. Jagpal*, No. 05-21-00125-CV, 2023 WL 3914554 (Tex. App.—Dallas June 9, 2023, no pet.) (mem. op.); *Bell v. Louisville & Nashville R. Co.*, 478 N.E.2d 384 (Ill. 1985); and *Ganpat v. E. Pac. Shipping, Pte., Ltd.*, 581 F.Supp.3d 773 (E.D. La. 2022).[5] We note that none of these cases are binding on this Court. *See In re P.J.G.*, No. 13-24-00087-CV, 2026 WL 202560, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 26, 2026, no pet.) (mem. op.) (citing cases highlighting that Texas courts are obligated to follow only higher Texas courts and the United States Supreme Court). In addition, *Munro*, *Bell*, and *Ganpat* involve the denial of a party's forum non conveniens motion when that motion was filed more than two years after a lawsuit commenced. *See Munro*, 2023 WL 3914554, at *7 (holding that the "appellees waived reliance on forum non conveniens with intentional

---

[5] SRGV also cites *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 519 (N.Y. App. Div. 2013). However, we have reviewed *Elmaliach* and conclude it does not support the proposition espoused by SRGV.

conduct inconsistent with such claim" when they filed suit in the forum in 2017 and did not raise forum non conveniens until 2020, "after the parties had litigated back and forth, and after the trial court had partially granted appellants' motion for summary judgment"); *Ganpat*, 581 F.Supp.3d at 793–94 (holding that the plaintiff "knew of the facts supporting its forum non conveniens motion for two and a half years before the motion was filed" and stated that the appellee's "dilatoriness in filing its forum non conveniens motion is most influential" on the court's decision to deny it); *Bell*, 478 N.E.2d at 385–395 (upholding, in a consolidated case, a trial court's orders denying the appellee's forum non conveniens motion because the appellee delayed filing its motion over thirty months after the complaint was filed in each case). Here, the record demonstrates that Rialto filed its forum non conveniens motion less than three months after SRGV filed its original petition. Thus, the record does not support that Rialto untimely filed its motion based on the cited cases.

SRGV also argues that Rialto "canceled" hearings set for its forum non conveniens motion six times throughout 2020 and 2021. However, SRGV provides no citations to the record supporting these assertions and has thus inadequately briefed this point. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Shetty v. Arconic Inc.*, No. 01-19-00158-CV, 2020 WL 2026371, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (mem. op.) (holding issues inadequately briefed when appellant's "brief include[d] a recitation of the facts . . . [but] no record references"). In any event, the record demonstrates that the parties requested two hearings set in 2020 to be removed from the trial court's docket pursuant to a Rule 11 agreement. *See* TEX. R. CIV.

22

P. 11 (providing that an agreement between attorneys or parties is enforceable if it is in writing, signed, and filed as part of the record). Thus, SRGV cannot now complain about these resets on appeal. *See Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 481 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (holding appellants could not complain that the trial court heard a statutory forum non conveniens motion less than thirty days prior to trial when they agreed to do so pursuant to a Rule 11 agreement). Furthermore, we have found nothing in the record that supports SRGV's assertion that Rialto was solely responsible for causing the other four hearings to be "canceled." As noted above, the parties filed a joint request for the trial court to hear Rialto's motion by submission instead of conducting an in-person hearing.

SRGV further argues that "[w]hen the trial court failed to rule on the motion within a reasonable time, [Rialto] could have filed a motion[] requesting a ruling," but it failed to do so. SRGV additionally asserts that Rialto could have filed a mandamus proceeding to obtain a ruling, but that it failed to do so. However, SRGV provides no citation to case authorities in support of these contentions. *See* TEX. R. APP. P. 38.1(i). Furthermore, we have found no case authorities providing that a trial court abuses its discretion when it grants a forum non conveniens motion at an "unreasonable" time. Accordingly, we reject SRGV's contentions for these reasons.

### 2. Alternate Forum

Our analysis of SRGV's appeal necessarily begins by determining whether there was an available and adequate alternate forum. *See Alvarez Gottwald*, 568 S.W.3d at 249. In its conclusion of law number fifteen, the trial court concluded that

23

New York courts are available; the parties have already litigated there and the Loan Agreement contains a permissive New York forum selection clause. In addition, New York courts are adequate to address [SRGV's] claim, which arose in New York and is controlled by New York law.

SRGV does not challenge this particular conclusion of law. Furthermore, SRGV does not challenge any of the trial court's findings of fact in relation to this conclusion. "We defer to unchallenged findings of fact that are supported by some evidence." *R2 Rests., Inc. v. Mineola Cmty. Bank, SSB*, 561 S.W.3d 642, 653 (Tex. App.—Tyler 2018, pet. denied) (citing *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014)); *see also Pettit v. Tabor*, No. 06-19-00002-CV, 2020 WL 216025, at *13 (Tex. App.—Texarkana Jan. 15, 2020, pet. denied) (mem. op.) ("Unless no evidence supports the finding, or the contrary is established as a matter of law, we are bound by the trial court's unchallenged findings of fact."). We conclude that the unchallenged findings are supported by legally and factually sufficient evidence, namely, the evidence Rialto attached to its motion to dismiss, including Doherty's affidavit testimony regarding the chronology of the underlying lawsuit and SRGV's New York litigation,[6] the copy of SRGV's loan agreement and deed of trust, the copy of SRGV's complaint filed in the New York litigation, the copy of the dismissal order issued in the New York litigation, SRGV's notice of discontinuance in the New York litigation, and Rialto's indemnification demand letter to SRGV. *See Alvarez Gottwald*, 568 S.W.3d at 246; *Eggemeyer*, 621 S.W.3d at 890. Consequently, we are bound by the unchallenged findings and conclude they support the trial court's conclusion. *See Pettit*, 2020 WL 216025, at *13. Furthermore, that

---

[6] We note that SRGV specifically challenges other aspects of Doherty's affidavit testimony as it relates to public and private interest factors, which we address below.

24

same evidence, beyond the findings, supports the trial court's conclusion; therefore, we next consider the relevant public and private interest factors. *See Diaz*, 618 S.W.3d at 805.

### 3. Public and Private Interest Factors

In its brief, SRGV argues the trial court neglected to balance the public and private interest factors, that "[a]bsolutely nothing contained in the trial court's findings and conclusions reflects that such balancing occurred," and that "[s]uch failure to balance and explain its reasoning clearly constitutes an abused of discretion." We disagree.

Before addressing the factors, we first note that SRGV challenges Doherty's affidavit as being insufficient to "warrant transfer." Specifically, SRGV argues that Doherty's affidavit was conclusory because it failed to discuss all "elements" relevant to the trial court's forum non conveniens determination and that a movant "must present evidence and argument on each and every one" of these "elements." *See City of Stephenville v. Belew*, 692 S.W.3d 347, 374 (Tex. App.—Eastland 2024, pet. denied) ("Affidavits are conclusory if the facts in the affidavits do not support the proffered conclusions." (citing *Yost v. Jered Custom Homes*, 399 S.W.3d 653, 660 (Tex. App.—Dallas 2013, no pet.))). As laid out above, a trial court's determination of forum non conveniens involves the consideration and balance of "all the *relevant* public and private interest factors," not elements. *Quixtar*, 315 S.W.3d at 31 (emphasis added). Furthermore, SRGV has cited no authority supporting the contention that a movant must present evidence pertaining to each and every factor, and we have found authority explicitly holding the opposite. *See* TEX. R. APP. P. 38.1(i); *Crum & Forster Specialty Ins.*

25

*Co. v. Creekstone Builders, Inc.*, 489 S.W.3d 473, 482–83 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding that a defendant moving for dismissal on forum non conveniens grounds is not required to prove that each public and private interest factor strongly favors dismissal of the case).

SRGV also challenges the trial court's conclusion of law number thirteen, arguing that "the trial court erred in claiming[] its role under forum non conveniens is to 'determine which forum is best suited to the litigation.'" The conclusion stated that, "In deciding whether to exercise forum non conveniens, courts must determine whether there exists an alternative forum and, if so, determine which forum is best suited to the litigation." We agree that this conclusion does not accurately state the basis by which a trial court must determine a forum non conveniens motion. *See Diaz*, 618 S.W.3d at 804 ("Courts balance the plaintiff's choice of forum against how a set of public and private interests might 'strongly favor' an available alternate forum."). However, if an appellate court "determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (citing *Scholz v. Heath*, 642 S.W.2d 554, 559 (Tex. App.—Waco 1982, no writ). In light of *Marchand*, we now evaluate the trial court's conclusions regarding the public and private interest factors.

In conclusion of law number sixteen, the trial court concluded that the public interest factors weighed in favor of dismissal because

> New York courts are conveniently situated to resolve this matter. This is fundamentally a New York dispute, involving questions of New York law, a New York contract, and the interpretation of the New York Order in the New York Litigation. The only aspect of this case related to the Hidalgo

26

County community is that the Loan issued under the Loan Agreement is secured by [The Shoppes]. But this case has no relation to the real property securing the Loan; it involves the reasonableness of a New York law firm's legal fees incurred as part of the New York Litigation, under a New York contract. As New York is where the fees were incurred, Texas has no genuine interest in this litigation. In addition, New York has a pronounced local interest in deciding the issue before this Court because the issue arose in New York and the court is asked to interpret an order issued by a New York court. Lastly, it is more convenient to litigate this case in New York because the case is controlled entirely by New York law.

SRGV does not challenge any of the trial court's findings of fact which relate to this conclusion, and we have already concluded above that those findings were supported by sufficient evidence. In addition, beyond the findings, we conclude the same evidence is legally and factually sufficient to support the trial court's conclusion. *See Alvarez Gottwald*, 568 S.W.3d at 246; *Eggemeyer*, 621 S.W.3d at 890.

However, SRGV raises various arguments concerning the trial court's conclusion that implicate the third and fourth public interest factors. It argues that the trial court "misappl[ied] both the applicable law and facts" when it "claimed Texas possessed no interest in this matter." Specifically, SRGV contends that it is a Texas resident, which provides Texas an interest. As discussed above, SRGV's residency in Texas does not foreclose all possibility that a trial court cannot properly conclude that the public and private interest factors weigh in favor of an alternate forum. *See Alvarez Gottwald*, 568 S.W.3d at 248. In any event, SRGV's argument implicates the third public interest factor, that is, the general interest in having localized controversies decided in the jurisdiction in which they arose. *See Siegmund*, 309 S.W.3d at 710. In support of its contention, SRGV argues that "[t]he real property securing the loan and which [Rialto] sought to obtain is

27

located in Texas, which provides Texas an interest" and that the trial court "ignored the undisputed evidence that [Rialto] threatened to foreclose on such property unless its claim was paid." The only reference to the real property securing the loan at issue in SRGV's petition was its statement that, "[I]f [SRGV] would have failed to pay the $205,051.00 in attorney's fees demanded, [Rialto] would be faced with the threat of foreclosure on [SRGV's] shopping center." SRGV's pleadings otherwise raised no cause of action or requested relief concerning any threat to foreclose on SRGV's real property by Rialto. Instead, SRGV sought a declaratory judgment concerning the attorney's fees it paid to Rialto. The record evidence shows that Rialto demanded payment of attorney's fees pursuant to an indemnity provision of the loan agreement, for fees it incurred in the New York litigation initiated by SRGV. Furthermore, the only evidence related to a threat of foreclosure by Rialto came from Carlson's affidavit testimony stating:

> By an email dated August 9, 2019[,] from Northmarq (see attached Exhibit B) [SRGV] was advised that Rialto "had instructed Northmarq to apply the Lender's legal fees of ($207,299.97) (this amount included mediator fees of approximately $2,250.00), to the September billing statement" for its loan. By this communication, [SRGV] felt that [Rialto] had made it clear, albeit indirectly, that if [SRGV] did not pay the requested fees, [Rialto] could call a loan default and then [Rialto] would ultimately[ ]foreclose on [SRGV's] property in Hidalgo County, pursuant to the deed of trust filed in the Hidalgo County deed records.

The referenced Exhibit B was a copy of an email forwarded to Carlson written by Wilson Molitor of Northmarq. Molitor wrote the following:

> The special servicer, Rialto, has instructed North[m]arq to apply Lender's legal fees of $207,299.97 to the September billing statement. These are Lender's legal costs tied to the lawsuit filed by [SRGV] in September 2018. Please let me know if there are any questions.

Nothing in Carlson's affidavit testimony, nor the referenced exhibit, demonstrates that

28

Rialto actually threatened to foreclose on the real property securing SRGV's loan. Carlson's testimony indicates, at most, that SRGV subjectively believed it received a threat of foreclosure from Rialto. The trial court was not required to credit Carlson's affidavit testimony. *See Eggemeyer*, 621 S.W.3d at 890. Moreover, we cannot say the real property securing SRGV's loan is even merely incidental or a collateral interest for Texas since SRGV's petition sought no relief or damages in relation to any claims involving the real property. *See In re Pirelli*, 247 S.W.3d at 676 (holding "[i]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State."). Based on the foregoing, we cannot conclude that the trial court was erroneous in weighing the third public interest factor in favor of New York.

SRGV further argues that Texas law, and not New York law, will determine the reasonableness of attorney's fees, citing *In re Allegretti*, 584 B.R. 287, 291–92 (Bankr. N.D. Ill. 2018) and *Microtek Med., Inc. v. 3M Co.*, 942 So.2d 122, 130 (Miss. 2006). SRGV does not explain the relevance of the cited cases and we have found none. In any event, SRGV's contention implicates the fourth public interest factor, that is, the appropriateness in having a diversity case tried in a forum that is familiar with the law that must govern the case. *See Siegmund*, 309 S.W.3d at 710. Here, the record evidence demonstrates that Rialto's demand of attorney's fees was "written in response to" SRGV's New York litigation, based on the indemnification provision in "Section 9.17(f)" of the loan agreement. The record evidence also demonstrates that the loan agreement itself is governed by New York law. As such, we conclude that the applicable law concerning

29

reasonableness of attorney's fees in this case is governed by New York law, not Texas law. SRGV also argues that "application of a foreign jurisdiction's law does not mandate a forum non conveniens dismissal." On this point, the Supreme Court has held that "the need to apply foreign law point[s] toward dismissal" but that this alone is insufficient to justify dismissal when a balancing of all relevant factors shows that a plaintiff's chosen forum is appropriate. *Reyno*, 454 U.S. at 260 n.29. We find *Reyno* distinguishable because the trial court here concluded that the public and private interest factors weighed in favor of dismissal and did not base its ruling solely on the application of the alternate forum's law.

SRGV also argues that Rialto "was required to prove that New York law is exceptionally arcane," citing *Atlantic Marine Construction Co., Inc. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). Again, SRGV fails to explain the relevance of the cited case. Regardless, *Atlantic Marine* does not stand for the proposition that the movant of a forum non conveniens motion must prove that any applicable foreign law would be, as SRGV says, "exceptionally arcane." SRGV also argues that in the absence of such proof, "Texas courts presume foreign law is the same as Texas law," citing *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963) (presuming Alabama law to be the same as Texas law when no proof of Alabama law was introduced at trial) and *J. Parra e Hijos, S.A. de C.V. v. Barroso*, 960 S.W.2d 161, 167 n.6 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.). SRGV again does not explain the relevance of these cases, but nevertheless, we find them inapposite as the issues in those cases do not involve forum non conveniens analysis.

30

SRGV argues that Rialto was "required to demonstrate that Texas juries were completely incompetent to determine reasonable attorney's fees," but provides no direct authority supporting that proposition and we are not aware of any. *See* TEX. R. APP. P. 38.1(i). SRGV further argues that Rialto was required to present evidence of comparative docket conditions, citing *Ito v. Tokio Marine & Fire Ins. Co., Ltd.*, 166 F. Appx 932, 935 (9th Cir. 2006). In *Ito*, the Ninth Circuit held that the federal district court "improperly analyzed the issue of court congestion by commenting on congestion" in one forum without considering whether the other forum "provided a speedier forum." *Id.* We conclude *Ito* is not relevant to this case because the trial court made no analysis or conclusion of law regarding court congestion between the two forums involved in this case. Furthermore, *Ito* does not stand for the proposition that the movant of a forum non conveniens motion must, in all cases, provide proof of court congestion. *See id.*; *see also Crum & Forster Specialty*, 489 S.W.3d at 482–83. Based on the foregoing, we cannot conclude that the trial court was erroneous in weighing the fourth public interest factor in favor of New York.

In conclusion of law number seventeen, the trial court concluded that the private interest factors weighed in favor of dismissal because

> [T]he primary sources of proof are more conveniently available and reviewed in New York by the New York courts. The primary factual issue in this case is the reasonableness of the at-issue attorneys' fees. The sources of proof regarding these fees will come from the files, affidavits, and testimony of the New York law firm and attorneys that litigated the New York Litigation. This proof and witness testimony is much more accessible in New York than in Texas. Additionally, the New York courts have a process in place to determine whether legal fees are reasonable; New York Supreme Court judges refer them to Special Masters or Judicial Hearing Officers, whose primary job is to determine the applicability and reasonableness of

31

attorneys' fees.

Again, we note that SRGV does not appear to challenge any of the trial court's findings of fact in relation to this conclusion, which we have already concluded are supported by legally and factually sufficient evidence. We conclude the same evidence, beyond the findings, also supports the trial court's conclusion. *See Alvarez Gottwald*, 568 S.W.3d at 246; *Eggemeyer*, 621 S.W.3d at 890. However, in relation to the trial court's conclusion, SRGV argues that the following statements in Doherty's affidavit were conclusory:

> The sources of proof regarding the at-issue attorneys' fees will come from, among other things, the files of [Doherty's] law firm, Alston & Bird, in New York. Likewise, the supporting testimony and affidavits will come from [Doherty] and the other attorneys and support staff that litigated the New York Litigation, all of whom are in New York.
>
> The New York courts have a process in place to determine whether legal fees are reasonable. New York Supreme Court judges refer them to Special Masters or Judicial Hearing Officers, whose primary job is to determine the applicability and reasonableness of attorneys' fees.

The basis of SRGV's conclusory argument is that "[Rialto] and the trial court must go beyond merely stating the location of the witnesses and documents; [Rialto] must prove and the trial court must find that the documents cannot be readily transported to Hidalgo County." We do not agree that the complained-of statements constitute any proffered conclusions. *See Belew*, 692 S.W.3d at 374. Furthermore, the Texas Supreme Court has already rejected similar reasoning in *Quixtar*:

> [P]arties do not need to quantify the extra costs of litigating in an undesirable forum in detail for a forum non conveniens dismissal. They only must provide enough information for the trial court to weigh the interests at hand. The court of appeals inappropriately disregarded Quixtar's evidence about the location of its witnesses and records. *Reyno*, 454 U.S. at 258–59[]. It is an "obvious conclusion" that costs will increase when witnesses travel great distances. [*In re*] *Volkswagen*, 545 F.3d[ 304,] 317 [(5th Cir. 2008)] (quoting

32

[*In re*] *Volkswagen AG*, 371 F.3d [201,] 205[ (5th Cir. 2004)]. Likewise, Quixtar could have but did not need to quantify the expense or difficulty of transporting its records. We conclude that there was sufficient evidence before the trial court for it to determine that the private interest factors weighed in favor of dismissal.

315 S.W.3d at 34–35. In accordance with *Quixtar*, we conclude that Doherty's affidavit was not conclusory and that Rialto was not required to prove that the "sources of proof regarding the at-issue attorneys' fees" cannot be readily transportable to Hidalgo County. *See id.* Regarding these "sources of proof," SRGV argues that Doherty failed to specifically identify the witnesses, the basis and nature of their testimony, or their relationship to Rialto. We disagree because Doherty specifically stated that "the supporting testimony and affidavits" regarding the at-issue attorney's fees "will come from [Doherty] and the other attorneys and support staff that litigated the New York Litigation, all of whom are in New York." Furthermore, to the extent SRGV impliedly argues that this statement lacks sufficient detail, Rialto was not required to provide minute, detailed evidence concerning its "sources of proof." *See id.* Instead, Rialto need only have provided "enough information for the trial court to weigh the interests at hand," and we conclude that it did so. *Id.* at 34. Based on the foregoing, we cannot conclude that the trial court was erroneous in weighing the private interest factors in favor of New York.

### 4. Deference

SRGV next argues that the trial court deprived it of the "almost complete deference it deserved by misapplying the applicable law." *See Alvarez Gottwald*, 568 S.W.3d at 248. SRGV contends that a corporation can maintain two residences and "be sued in both," quoting *Miler v. Windsor Ins. Co.*, 923 S.W.2d 91, 95 (Tex. App.—Fort Worth 1996, writ

denied). SRGV further argues that it is a Texas resident for "forum non conveniens purposes," and that it "filed suit where it is located, Hidalgo County."

The trial court did not issue any conclusions of law regarding SRGV's residency. We note that Carlson stated that SRGV "maintains two legal residencies," one in Connecticut "where its executive offices are located" and the other in Texas "where its business activities are conducted and its assets are located." He further stated that SRGV's "sole source of revenue is the monies generated from the shopping center, which are deposited in Texas bank accounts," that it "files the relevant Texas corporate tax returns," and that it "maintains an on-site manager or managers in Texas, who make the day to day operational decisions for [SRGV]." On the other hand, SRGV identified itself as "a Delaware limited liability company" in its loan agreement and pleaded that it was a "Delaware limited liability company with its principal place of business at 149 Colonial Road, Manchester, Connecticut 06045" in its complaint filed in the New York litigation.

We first note that the Texas Supreme Court has held that an appellant's "authority to do business in Texas does not govern residency." *Quixtar*, 315 S.W.3d at 33 n.1 (citing *In re Smith Barney, Inc.*, 975 S.W.2d at 596 ("Corporations' power to sue and be sued says little about their right to do so, and absolutely nothing about the restrictions of the forum non conveniens doctrine.") (citation modified)). However, even assuming without deciding that the evidence supports that SRGV is a Texas resident, causing SRGV's choice of forum to be entitled to deference, *see Alvarez Gottwald*, 568 S.W.3d at 248, we nevertheless conclude that the trial courts findings and conclusions of law support an implied conclusion that the public and private interests "strongly favor" New York as an

alternate forum. *Diaz*, 618 S.W.3d at 804. Therefore, the trial court did not abuse its discretion in granting Rialto's forum non conveniens motion. *See In re Gen. Elec. Co.*, 271 S.W.3d at 685. We overrule SRGV's first issue.

### III. DISMISSAL WITH PREJUDICE

In its second issue, SRGV argues that the trial court erred in dismissing its case with prejudice. Generally, a dismissal based on forum non conveniens must be without prejudice. *See Belmonte v. Belmonte*, No. 09-07-225 CV, 2008 WL 2057903, at *5 (Tex. App.—Beaumont May 15, 2008, no pet.) (mem. op.) (citing *Owens Corning v. Carter*, 997 S.W.2d 560, 580 n.13 (Tex. 1999)). Rialto agrees that the judgment should be "reformed . . . to be without prejudice." Texas Rules of Appellate Procedure 43.2(b) authorizes the courts of appeals to "modify the trial court's judgment and affirm it as modified." TEX. R. APP. P. 43.2(b). We agree with the parties, sustain SRGV's second issue, and modify the trial court's judgment to read that the cause is dismissed without prejudice. *See Belmonte*, 2008 WL 2057903, at *5.

### IV. CONCLUSION

We affirm the judgment of the trial court, as modified.

CLARISSA SILVA
Justice

Delivered and filed on the
30th day of April, 2026.